1
2
3
4
5
6
7
8
9
10
11
12
13

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

WILLIE RAY LEWIS,

    *Petitioner*,                          2:10-cv-01225-PMP-CWH

vs.

                                      ORDER

STATE OF NEVADA, *et al.*,

    *Respondents.*

14
15
16

      This represented habeas matter under 28 U.S.C. § 2254 comes before the Court on Respondents' (#48) to dismiss.  Respondents contend in principal part that the counseled Second Amended Petition (#43) is a mixed petition including unexhausted claims.

17

### Background

18
19
20
21
22
23
24

      Petitioner Willie Ray Lewis challenges his 2006 Nevada state conviction, pursuant to a jury verdict, of five counts of sexual assault of a minor under sixteen years of age, three counts of lewdness with a minor under the age of fourteen, and one count of attempted sexual assault of a minor under sixteen years of age.  Under the sentences imposed on the charges, the majority of which run concurrently, it appears that Petitioner first could be eligible for a parole outside an institution after a minimum of 24 years.  Petitioner challenged his conviction on direct appeal and in two state post-conviction petitions.

25

### Governing Exhaustion Law

26
27
28

      Under 28 U.S.C. § 2254(b)(1)(A), a habeas petitioner first must exhaust state court remedies on a claim before presenting that claim to the federal courts.  To satisfy this exhaustion requirement, the claim must have been fairly presented to the state courts

completely through to the highest court available, in this case the Supreme Court of Nevada. *E.g., Peterson v. Lampert*, 319 F.3d 1153, 1156 (9th Cir. 2003)(*en banc*); *Vang v. Nevada*, 329 F.3d 1069, 1075 (9th Cir. 2003).   In the state courts, the petitioner must refer to the specific federal constitutional guarantee and must also state the facts that entitle the petitioner to relief on the federal constitutional claim. *E.g., Shumway v. Payne*, 223 F.3d 983, 987 (9th Cir. 2000).  That is, fair presentation requires that the petitioner present the state courts with both the operative facts and the federal legal theory upon which the claim is based. *E.g., Castillo v. McFadden*, 399 F.3d 993, 999 (9th Cir. 2005).  The exhaustion requirement insures that the state courts, as a matter of federal-state comity, will have the first opportunity to pass upon and correct alleged violations of federal constitutional guarantees. *See,e.g., Coleman v. Thompson*, 501 U.S. 722, 731 (1991).

Under *Rose v. Lundy*, 455 U.S. 509 (1982), a mixed petition presenting both exhausted and unexhausted claims must be dismissed without prejudice unless the petitioner dismisses the unexhausted claims or seeks other appropriate relief.

### *Discussion*

### *Continuing Vitality of Vasquez v. Hillery*

The briefing on a number of issues presented on the motion to dismiss focuses upon whether the 1986 Supreme Court decision in *Vasquez v. Hillery*, 474 U.S. 254 (1986), remains good law following upon the 1996 adoption of the Antiterrorism and Effective Death Penalty Act (AEDPA) and the decision in *Cullen v. Pinholster*, 131 S.Ct. 1388 (2011).

In *Vasquez*, the Supreme Court held that the presentation of supplemental evidence in federal court that does not fundamentally alter the legal claim already considered by the state courts does not render a claim unexhausted.  *See* 474 U.S. at 257-60.

In *Pinholster*, the Supreme Court held that deferential review on the merits pursuant to the AEDPA under 28 U.S.C. § 2254(d)(1) is restricted to the record that was before the state courts.

The Ninth Circuit has noted – but not yet conclusively resolved – the potential tension between the foregoing exhaustion rule under *Vasquez* and the holding in *Pinholster* as to the

1   record considered in applying deferential review under the AEDPA. *See Stokley v. Ryan*, 659

2   F.3d 802, 807-09 (9th Cir. 2011), *cert. denied*, 133 S.Ct. 134 (2012); *see also Ruffin v. Director*

3   *Nevada Department of Corrections*, 2011 WL 2433805, No. 2:07-cv-00721-RLH-PAL, slip op.

4   at *4 n.10 (D.Nev., June 13, 2011)(similarly noting the potential tension between the two

5   rules).

6           Judge Reed of this Court has resolved the potential tension between the two rules,

7   however, and has fully harmonized *Vasquez* and *Pinholster*. In *Moor v. Palmer*, No. 3:10-cv-

8   00401, Judge Reed observed:

9
10                  The Court concludes, however, that the two rules can be
            harmonized, as the two rules in truth operate independently of
            one another. The *Vasquez* rule applies to all federal habeas
11          claims, without regard to whether or not the claims later may be
            subject to deferential review on the merits under § 2254(d)(1). It
12          would make little sense to restrict the rule announced in *Vasquez*
            to the ambit of evidence that may be considered on deferential
13          review under *Pinholster* – based upon alleged inconsistency
            otherwise between the two rules – as to a habeas claim that
14          instead was subject to *de novo* review rather than deferential
            AEDPA review. That is, there is no inconsistency – practical or
15          otherwise – between the two rules in that instance because the
            *Pinholster* rule is inapplicable in that context.
16
                    Thus, resolving the exhaustion issue according to the
17          ambit of evidence that may be considered on deferential AEDPA
            review under *Pinholster* in truth would put the cart before the
18          horse, with *Pinholster* being the cart. Analytically, the exhaustion
            issue should be resolved in the same manner without regard to
19          whatever the scope of factual and legal review ultimately later
            may be on the merits, whether on deferential or *de novo* review.
20          Without a doubt, as a practical matter, in many cases additional
            factual allegations in the federal petition that will not render a
21          claim unexhausted under *Vasquez* nonetheless will be excluded
            from federal consideration on the merits under *Pinholster* as to
22          claims subject to deferential AEDPA review. However, as to
            claims instead subject to *de novo* review, the rule in *Vasquez*
23          operates both independently from and not inconsistently with the
            rule in *Pinholster*. These, again, are independent rules
24          addressed to what are often practically interrelated but
            nonetheless legally distinct issues.
25
                    The Court accordingly will follow the rule of exhaustion
26          stated in *Vasquez* as a still fully viable rule following *Pinholster*.

27   *Moor*, No. 3:10-cv-00401, #27, at 9-10 (D.Nev., July 17, 2012).

28           The undersigned is persuaded by Judge Reed's analysis and will follow it here.

***Exhaustion of Ground 1***

In Ground 1 of the Second Amended Petition, Petitioner alleges that he was denied due process in violation of the Sixth and Fourteenth Amendments when the trial court allowed the introduction of prior bad act evidence of alleged prior violence, resulting in a fundamentally unfair trial.

Respondents contend that the claim presented on federal habeas review is not fully exhausted because the Second Amended Petition includes factual allegations not presented in Petitioner's Opening Brief on direct appeal.

In the Opening Brief, Petitioner asserted, *inter alia*, the following:

> . . . . For the first time, **after empanelling a jury**, the State announced their intention to introduce a variety of bad acts, including evidence that Appellant sometimes *carried a gun*, occasionally *threatened people with guns*, had *used a gun* in commission of his crime and sometimes *beat* and *injure* his family in general. [Trial, pp. 165-166]

> Appellant objected and argued that *gun threats* and multiple instances of violence were *prejudicial* uncharged prior bad acts which are *not relevant* because not contained in any of the 45 [originally charged] felony counts. Additionally, Appellant argued lack of notice, since the State had filed NO pre-trial motions to admit Appellant's alleged violence or use of a gun. [Trial, pp. 163-166] Appellant argued the rules of court do not allow this type of evidence ambush. Appellant pointed out he could not be prepared to defend against unnoticed, unknown and uncharged bad acts. [Trial, pp. 165-166] The Court, unaware of local Court Rules, ruled that NO rule required motions for bad acts to be before trial. The court announced that the Petrocelli hearing would be had after the bad acts witnesses took the stand to testify. [Trial, Vol. I, pp.166-167].

> Appellant requested a continuance. [Trial, Vol. I, pp. 166-168] Appellant explained we could not participate in a Petrocelli hearing in any meaningful way without proper notice of *the exact bad acts* the state intended to use and an opportunity to identify possible witnesses. Only after investigation could Appellant prepare for effective cross-examination and defeat the *clear and convincing* burden of proof. [Trial, pp. 167-168]

> The court denied Appellant's request for continuance with the logic that civil trials have motion deadlines, but criminal trials are full of surprises. . . . .

> The Court held the un-noticed Petrocelli hearing in the middle of trial, after opening remarks. [S.L.] testified to the

following uncharged bad acts: 1) Appellant beat mom up all the time – punching, hitting, and kicking her face and body; 2) Appellant once pulled a gun on mom; 3) Appellant hit her on the head with a gun when she was nine or ten years old; 4) Appellant whipped her so hard with a belt that it scarred her arms when she was eight or nine years old; 5) Appellant threatened to shoot either [S.L.] or her mom if she told anyone about Appellant's abuse; 6) Appellant threatened others with a gun about five times through the years.  [Trial, pp. 188-196].

. . . . .

## **ARGUMENT**

I.    The Court's ignorance of the law, and erroneous belief in "trial by surprise" resulted in extremely prejudicial uncharged bad acts being presented at Appellant's trial without notice in violation of established local court rules and the 5th, 6th and 14th Amendments to the United States Constitution.

The State appeared at numerous calendar calls without mentioning their intention to introduce *numerous uncharged* prior bad acts at trial. The first Appellant heard of their intent to use bad acts was mid-trial. Appellant objected arguing inadequate notice under the rules and notions of fair play. [Trial, pp. 163-1661 The trial court felt this Court allowed the State of Nevada to ignore procedural rules. . . . The trial judge suggested that criminal defendants are subject to trial by surprise.  . . . .

The trial court allowed the following irrelevant uncharged bad act evidence:  1)  Appellant beat mom up all the time – punching, hitting, and kicking her face and body; 2) Appellant pulled a gun on mom; 3) Appellant hit [S.L.] on the head with a gun when she was nine or ten years old; 4) Appellant whipped her so hard with a belt that it scarred her arms when she was eight or nine years old; 5) Appellant threatened to shoot either [S.L.] or mom; 6) Appellant threatened others with a gun about five times through the years. [Trial, pp. 188-196]  Appellant was not charged with any of these acts in his trial. These multiple episodes of violence had no relevance to any of his charged acts. As such, the jury should never have heard such highly inflammatory collateral allegations.

. . . .

The probative value of the uncharged, irrelevant, highly inflammatory and prejudicial allegations of bad acts in this case cannot be determined to *substantially outweigh* its prejudice as required by law. The only evidence against Appellant was the testimony of the alleged victims. No other corroborating evidence was presented. The danger of Appellant being convicted because he is a bad man is great due to the accumulation of needless inflammatory evidence of Appellant's *gun use*, *threats* and

1
2
3
4

*violence*, which sometimes resulted in serious bodily harm to his family. As in the case-law cited above, the uncharged bad acts were irrelevant and prejudicial. They were uncorroborated and uncharged therefore not proven by clear and convincing evidence. The prejudicial nature of said evidence was *extreme*, due to the nature of the evidence presented and its complete irrelevance to the crimes charged.

5

. . . .

6

#36, Ex. 20, at 3-4, 6-7 & 8 (emphasis in original)(footnotes omitted).

7        In the motion to dismiss, Respondents contended that Ground 1 was unexhausted to

8  the extent that Petitioner alleged that: (a) he "beat up mom all the time; (b) he "kicked mom;"

9  and (c) [S.L.]testified that she left Lewis' residence because of problems, that he was beating

10 her, and that she was fed up with it and left.  Respondents since have conceded in the reply

11 that Petitioner is correct that allegations specifically that Lewis beat and kicked the mother

12 were included in the Opening Brief.  Respondent continue to maintain, however, that the

13 remaining allegation as to S.L.'s testimony is unexhausted.

14        The Court is not persuaded.  Including an allegation that S.L. testified that she left the

15 residence because she became fed up with the problems and with Lewis beating her does

16 not fundamentally alter the claim presented to the state supreme court.

17        In this regard, *Pinholster* is completely irrelevant to the analysis of the exhaustion issue

18 as to this ground; and *Vasquez* is only indirectly relevant to the issue.  Arguing facts that are

19 *in the state court record* but that are not specifically referenced in the argument to the state

20 supreme court does not directly implicate the holding of either *Pinholster* nor *Vasquez*.

21 *Pinholster* addresses whether a federal court can consider evidence on deferential AEDPA

22 review that was presented *for the first time in federal court*.  Not entirely dissimilarly, *Vasquez*

23 concerns the circumstances under which the presentation of evidence *for the first time in*

24 *federal court* renders a claim unexhausted.  The exhaustion issue as to Ground 1 does not

25 in any respect concern evidence presented for the first time in federal court, and the issue

26 therefore directly implicates neither *Pinholster* nor *Vasquez*.  To be sure, exhaustion requires

27 that a petitioner fairly present – in his argument – both the federal legal theory and the

28 operative facts to the state supreme court when he presents a claim there.  However, if

1    presenting new evidence in federal court does not render a claim unexhausted where the new

2    evidence does not fundamentally alter the claim, then, *a fortiori*, relying upon further factual

3    specifics that are *in* the state court record does not render the claim unexhausted where the

4    additional factual specifics do not fundamentally alter the claim.  The holding in *Pinholster*,

5    which is not an exhaustion rule in the first instance, is inapposite to this context.

6          In the present case, referring to S.L's testimony – in the state court record – that she

7    left after becoming fed up with the problems and with Lewis beating her does not

8    fundamentally alter the claim that was exhausted by Petitioner's argument in his opening brief

9    to the Supreme Court of Nevada.

10          Ground 1 is exhausted in full.

11    ***Cognizability of Ground 1***

12          Respondents additionally contend as to Ground 1 that the allegation therein that the

13    State did not prove the prior bad acts by clear and convincing evidence, as required by

14    *Petrocelli v. State*, 101 Nev. 46, 692 P.2d 503 (1985), presents only an issue of state law that

15    is not cognizable in federal habeas corpus.

16          The Court is persuaded that Petitioner has presented a cognizable federal

17    constitutional claim in Ground 1 notwithstanding the reference to *Petrocelli*.  A claim that the

18    introduction of propensity evidence violated due process is a cognizable claim rather than a

19    claim that is noncognizable on its face as a purely state law claim.  *See,e.g., Alberni v.*

20    *McDaniel*, 458 F.3d 860, 863-67 (9th Cir. 2006).  Whether the state supreme court's rejection

21    of such a federal constitutional claim was contrary to or an unreasonable application of clearly

22    established federal law as determined by the United States Supreme Court of course is

23    another issue.  *Cf. id.*  However, the Court is not persuaded that Petitioner's reference to

24    *Petrocelli* renders the explicitly-alleged federal due process claim in Ground 1 to be a

25    noncognizable state law claim in whole or in part.  Quite clearly, when the Court adjudicates

26    the merits of the federal claim, it will be looking to federal constitutional law as determined by

27    the United States Supreme Court, not state case law, for its resolution.

28          Ground 1 as alleged is cognizable on federal habeas review.

-7-

***Exhaustion of Ground 2***

In Ground 2, Petitioner alleges that he was denied rights to confront adverse witnesses, compulsory process, due process, equal protection and a reliable sentence when the trial court denied a defense request for a continuance in order to investigate and/or present witnesses to defend against the prior bad act evidence referenced in Ground 1.

Respondents contend that Petitioner did not present federal legal theories based upon denial of rights to compulsory process, equal protection and a reliable sentence on direct appeal to the state supreme court.

Petitioner concedes that he did not specifically mention these rights on direct appeal, but he maintains that the distinction is one without a difference. Petitioner refers to the lack of a clear analytical distinction between the right to a fair trial under the Fifth Amendment and the right to a fair trial under the Sixth Amendment. He maintains that the basic elements of a fair trial are defined largely through the several provisions of the Sixth Amendment. He concludes that the "substance" of the Ground 2 claim is the same as the claim presented to the state courts.

The Court is not persuaded. The point at issue is not whether there is a clear analytical distinction between rights to a fair trial under the Fifth as opposed to the Sixth Amendment. There *are* clear analytical distinctions between a denial of due process and a denial of the right to compulsory process, a denial of the right to equal protection (which does not even arise under the Fifth or Sixth Amendments), and a denial of the right to a reliable sentence. Moreover, it is established law that general appeals to broad principles such as "due process" or "a fair trial" do not exhaust any specific federal constitutional claim. *E.g., Castillo*, 399 F.3d at 999. Rather, fair presentation requires that the petitioner present the state courts with both the operative facts *and each federal legal theory* upon which his claim is based. *Id.* Petitioner's scattershot addition of multiple additional claims alleging violations of additional federal constitutional rights renders Ground 2 unexhausted to that extent.

Ground 2 is not exhausted to the extent that petitioner alleges claims of a denial of rights to to compulsory process, equal protection and a reliable sentence.

1     ***Exhaustion of Ground 3***

2        In Ground 3, Petitioner alleges that he was denied rights to due process and a fair trial

3 due to the cumulative effect of the errors alleged in Grounds 1 and 2.   This claim is

4 unexhausted to the extent that Ground 2 is unexhausted.   That is, Ground 3 is unexhausted

5 to the extent that petitioner alleges claims of a denial of rights to to compulsory process, equal

6 protection and a reliable sentence from the trial court's denial of a defense request for a

7 continuance in order to investigate and/or present witnesses to defend against the prior bad

8 act evidence referenced in Ground 1.

9     ***Exhaustion of Ground 4(b)***

10        In Ground 4, Petitioner alleges that he was denied effective assistance of counsel in

11 violation of the Sixth and Fourteenth Amendments when trial counsel:   (a) failed to

12 investigate, interview or present seven specifically named potential defense witnesses; and

13 (b) failed to interview the victims prior to trial, even after counsel came to be of the impression

14 that the eldest daughter had recanted.

15        Respondents contend that Ground 4(b) is not exhausted.

16        Petitioner contends that Ground 4(b) presents the "same claim . . . simply with more

17 detail" as the following in his first state petition:

18                               Ground One

19          Trial Counsel Was Ineffective In Failing to Conduct a Proper
         Investigation and Personally Interviewing Potential and Critical

20          Witnesses for a Defense, in Violation of the Sixth and Fourteenth
         Amendment to the U.S. Constitution

21                             . . . . .

22               . . . . . Prior to trial, Petitioner gave counsel a detailed
         account of the family problems and a list of names of witnesses

23          who had personal knowledge of the problems within the family.

24              [However,] no form of an investigation into the family
         problems or personal interview of the witnesses for a defense

25          was conducted by counsel for a proper defense. . . . .

26 #37, Ex. 28, at 7 & 7(A).

27        These generic allegations that counsel was ineffective for failing to interview

28 unspecified witnesses do not exhaust a claim that counsel was ineffective for failing to

1   interview the victims.  Ground 4(b) simply presents a different claim.  That is, a claim that
2   counsel failed to interview specified witnesses fundamentally alters a generic claim that
3   counsel failed to interview unspecified witnesses.

4          Petitioner characterizes the allegation regarding the eldest daughter's possible
5   recantation as an ancillary allegation.  However, the difficulty for Petitioner is that the
6   allegation is not ancillary to a claim actually alleged in the state court petition that counsel was
7   ineffective for failing to interview the victims.

8          Petitioner urges that he exhausted Ground 4(b) when he cited a state case in which
9   the state supreme court held that trial counsel was ineffective for failing to investigate the
10  background of the complaining witnesses.  Petitioner cites no authority for the novel
11  proposition that a petitioner can fairly present the operative *facts* of *his* claim by citing to prior
12  cases.  Under Lewis' argument, a petitioner would be constructively alleging the operative
13  facts of all claims alleged by all of the other petitioners in all of the cases that he cites.  Just
14  as there can be no exhaustion by "drive-by citation, detached from any articulation of an
15  underlying federal legal theory," *Castillo*, 399 F.3d at 1003, there quite clearly cannot be
16  exhaustion as to the operative factual allegations specific to the petitioner's own case by such
17  citation.

18         Petitioner further relies upon the rule of liberal construction of *pro se* pleadings.
19  However, liberal rules of construction do not eliminate the requirement that a petitioner must
20  fairly present both the operative facts and the federal legal theory upon which he relies.
21  Moreover, Lewis in particular demonstrated the capacity to allege specific claims in his two
22  *pro se* state petitions.  He simply did not allege a claim corresponding to Ground 4(b).

23         Petitioner additionally points to the state district court's denial of appointed counsel and
24  denial of an evidentiary hearing on his state Ground 1.  However, *pro se* petitioners
25  indisputably are subject to the exhaustion requirement; and Lewis quite clearly did not need
26  the benefit of an evidentiary hearing to allege a claim that trial counsel was ineffective for
27  failing to interview his two daughters.  Evidentiary hearings in any event are not a vehicle for
28  pleading claims but instead are a vehicle for proving claims that have been pled.

1     Finally, Petitioner asserts that the Supreme Court of Nevada ruled on the merits.
2   However, the state supreme court did not rule on the merits of a claim corresponding to
3   Ground 4(b), which was not presented to that court.

4     Ground 4(b) therefore is unexhausted.

5   **Consideration of Exhibits 25 & 65-75**

6     Respondents initially contended in the motion to dismiss only that Exhibits 25 and 65
7   through 75 to the Petition, as Amended, could not be considered under *Pinholster* because
8   they were not contained in the state court record.  However, the parties' opposition and reply
9   briefing in this regard thereafter proceeded off into a question of whether the exhibits
10  rendered unspecified claims unexhausted and into the relationship between *Pinholster* and
11  *Vasquez*.

12    The Court is not sanguine that an argument that certain exhibits may not be considered
13  under *Pinholster* constitutes a procedural defense to a claim that must be raised on a motion
14  to dismiss.  The argument can be made in the Answer.  The Court generally would prefer to
15  take up the matter of the specific evidence that it may consider in adjudicating the merits of
16  specific claims when it adjudicates the merits of the claims -- absent, *e.g.*, a motion for leave
17  to conduct discovery or for an evidentiary hearing.

18    Otherwise, the parties have engaged in a debate only in the abstract about whether
19  the exhibits render unspecified claims unexhausted.  With regard to exhaustion, the Court
20  cannot rule in the abstract and necessarily must rule as to whether a particular claim is
21  exhausted.  The parties' tangential discussion thus does not present a justiciable issue for the
22  Court to decide.

23  **Special Order 108**

24    Special Order 108 states in pertinent part that "[i]f the involvement of a minor child
25  must be mentioned, only the initials of that child should be used."  The Court understands that
26  the minor children involved in this case quite likely have become adults in the intervening
27  years.  However, the privacy interests of a then-vulnerable child do not stop as to incidents
28  in which they were involved as a child merely because they since have become an adult.  Nor

does the potential for harm from disclosure end after the child becomes an adult.  Indeed, it is not difficult to conceive of scenarios in which such public disclosure during the former child's adult years may be quite harmful.  For all papers filed hereafter, counsel shall comply with Special Order 108 as to all individuals who were minors at the operative time.

IT THEREFORE IS ORDERED that Respondents' motion (#48) to dismiss is GRANTED IN PART and DENIED IN PART such that the Court holds that the following claims (the "unexhausted claims") are unexhausted:

> (a)   Ground 2 to the extent that Petitioner alleges claims of a denial of rights to to compulsory process, equal protection and a reliable sentence;

> (b)   Ground 3 to the extent that Petitioner seeks to base a claim of cumulative error on denial of rights to compulsory process, equal protection and a reliable sentence from the trial court's denial of a defense request for a continuance; and

> (c)   Ground 4(b).

IT FURTHER IS ORDERED that Petitioner shall have **thirty (30) days** from entry of this order within which to file a motion for dismissal without prejudice of the entire petition, for partial dismissal only of the unexhausted claims, and/or for other appropriate relief.  Any motion filed must contain or be accompanied by, either contemporaneously or via a document filed within **ten (10) days** thereafter, a signed declaration by Petitioner under penalty of perjury pursuant to 28 U.S.C. § 1746 that he has conferred with his counsel in this matter regarding his options, that he has read the motion, and that he has authorized that the relief sought therein be requested from the Court.  The entire petition will be dismissed without prejudice for lack of complete exhaustion if a motion and/or the verification is not timely filed.

IT FURTHER IS ORDERED that the standard response and reply times under Local Rule LR 7-2 shall apply to any motion filed, except that the response time shall run from the filing of the verification rather than the motion itself.

-12-

1        IT FURTHER IS ORDERED that, for all papers filed hereafter in this action, counsel

2   shall comply with Special Order 108 as to all individuals who were minors at the time of the

3   operative events.

4        The Clerk of the Court further shall correct the docket sheet to reflect that the State of

5   Nevada no longer is before the Court as a Respondent and that Robert LeGrand has been

6   added as a Respondent.  See #42; #43, at 1.

7        DATED:  February 4, 2013.

8

9

10   _____
    PHILIP M. PRO
    United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-13-