UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

WILLIE RAY LEWIS,

Petitioner,

v.

STATE OF NEVADA, et al.,

Respondents.

Case No. 2:10-cv-01225-GMN-CWH

ORDER

Willie Ray Lewis' 28 U.S.C. § 2254 habeas corpus petition is before the court for final adjudication on the merits. As discussed below, his petition is denied.

**I.    Procedural History and Background**

Willie Ray Lewis was convicted pursuant to a jury trial of multiple counts involving his two daughters of lewdness with a minor under the age of 14, sexual assault of a minor under 16 years of age, and attempted sexual assault of a minor under 16 years of age (exhibit 29).[1] The Nevada Supreme Court on direct appeal concluded that insufficient evidence was presented to support 34 counts, and an amended judgment of conviction was entered. Exhs. 24, 29. While not entirely clear from the state-court record provided, the Nevada Department of Corrections inmate information reflects that Lewis is currently serving an aggregate sentence of life with the possibility of parole after 40 years.

---

[1] Exhibits 1-77 referenced in this order are exhibits to petitioner's third-amended petition, ECF No. 29, and are found at ECF Nos. 30-40. Exhibits 78-93 are exhibits to petitioner's fourth-amended petition, ECF No. 43, and are found at ECF No. 79.

1

The Nevada Supreme Court affirmed the denial of Lewis' state postconviction habeas corpus petition in part and reversed and remanded in part. Exh. 35. The state supreme court ordered the district court to consider whether appointment of counsel was appropriate and directed the district court to conduct an evidentiary hearing with respect to whether defense counsel should have interviewed certain witnesses. *Id.* The state district court did not appoint counsel, held an evidentiary hearing, denied the petition, and the Nevada Supreme Court affirmed the denial of the petition. Exhs. 45, 47, 55.

Lewis filed a second proper person state postconviction habeas petition; the Nevada Supreme Court affirmed the dismissal of the petition as successive and untimely. Exh. 63.

This court appointed counsel for Lewis' federal habeas corpus petition. Respondents have now answered his fourth-amended petition, and Lewis replied (ECF Nos. 43, 98, 100).

## II. Antiterrorism and Effective Death Penalty Act

28 U.S.C. § 2254(d), a provision of the Antiterrorism and Effective Death Penalty Act (AEDPA), provides the legal standards for this court's consideration of the petition in this case:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court

2

convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693-694 (2002). This Court's ability to grant a writ is limited to cases where "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer*, 538 U.S. at 73 (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell*, 535 U.S. at 694.

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer*, 538 U.S. at 74 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).

To the extent that the state court's factual findings are challenged, the "unreasonable determination of fact" clause of § 2254(d)(2) controls on federal habeas

3

review. *E.g., Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir.2004). This clause requires that the federal courts "must be particularly deferential" to state court factual determinations. *Id*. The governing standard is not satisfied by a showing merely that the state court finding was "clearly erroneous." 393 F.3d at 973. Rather, AEDPA requires substantially more deference:

> .... [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir.2004); *see also Lambert*, 393 F.3d at 972.

Under 28 U.S.C. § 2254(e)(1), state court factual findings are presumed to be correct unless rebutted by clear and convincing evidence. The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. *Cullen*, 563 U.S. at 181.

### III.   Instant Petition

#### a. Claims raised on direct appeal

##### i. Ground 1

Lewis contends that the admission of prior bad act evidence violated his Sixth and Fourteenth Amendment due process rights (ECF No. 43, pp. 7-10).

Generally, admission of evidence is a question of state law. State law errors do not warrant federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). Rather, a petitioner must establish "whether [or not] the state proceedings satisfied due process." *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009). In reviewing evidentiary questions, the challenged evidence is not constitutionally suspect unless it is irrelevant and has no probative value to questions at issue in the defendant's case. *Estelle*, 502 U.S. at 68-69. In short, the admitted evidence must be "so extremely unfair that its

4

admission violates 'fundamental conceptions of justice.'" *Dowling v. U.S.*, 493 U.S. 342, 352 (1990).

Nevada Revised Statutes, §48.045(2) provides:

> Evidence of other crimes, wrongs or acts is not admissible to prove character of a person in order to show that he acted in conformity therewith. It may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In order to admit other bad acts, the trial court must find that 1) the prior act is relevant to the crime charged; 2) the act is proven by clear and convincing evidence; and 3) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. *See also Petrocelli*, 101 Nev. 46, 51-52. The district court must conduct a hearing outside the presence of the jury at which time the state must present its justification for admission of the evidence and prove by clear and convincing evidence that the defendant committed the prior acts, and the district court must weigh the probative value of the proffered evidence against its prejudicial effect.

Lewis' daughter Shii Shii testified at the *Petrocelli* hearing regarding prior bad acts. Exh. 7, pp. 184-201. She stated that Lewis sexually abused her from when she was age 8 until age 16, and she did not tell anyone because she was scared. Shii Shii said that Lewis beat her mother frequently, punching, hitting, and kicking her. When she was 9 or 10 Lewis pulled a gun on her mother; when she went to help her mother, Lewis hit Shii Shii on the head with the gun. She testified that Lewis whipped her with a belt, scarring her arms. She said Lewis would tell her that if she told anyone about the sexual abuse he would shoot her and her mother.

Lewis' daughter Memory also testified. Exh. 7, pp. 201-208. She stated that she was afraid of her father because he was violent towards her mother, brother, his ex-girlfriends, and she had seen him pull a gun on her brother. The court ruled that Shii Shii's testimony about her fear of her father would be permitted at trial. The court

viewed Memory's testimony as vague with respect to whether she was afraid of her father and ruled it inadmissible. *Id.* at 214.

At trial, the court issued a limiting instruction before Shii Shii testified about why she did not tell anyone about the abuse for many years. *Id.* at 239. Shii Shii's trial testimony was similar to the *Petrocelli* hearing; she testified that Lewis pulled a gun and knives on her mother, that he had hit her on the head with a gun and that he had whipped her with a belt, scarring her arms. *Id.* at 239-242. She also stated that Lewis had said if she told anyone about the sexual abuse that he would shoot her and her mother. She testified that she continued to live with her father because she did not get along with her mother either as her mother was "mean in her own way," she did not think her mother wanted Shii Shii to live with her, and most of her brothers and sisters lived with her father. *Id.* at 246-247. Shii Shii stated that she moved out of her father's house because he was beating her, and she was finally fed up. *Id.* at 253. Shii Shii told her mother about the sexual abuse when she learned that Lewis was sexually abusing her sister too. She testified that Lewis is still her father, and she loves him. *Id.* at 254-256.

The Nevada Supreme Court rejected the challenge to the prior bad acts claim on direct appeal:

> Lewis also argues that the district court should not have allowed S.L. [Shii Shii] to testify about Lewis' violence because the testimony adduced at the *Petrocelli* hearing did not satisfy the [factors under *Tinch v. State*, 946 P.2d 1170 (Nev. 1985)]. We disagree. Under *Tinch*, a prior bad act is only admissible if the trial court determines that "(1) the incident is relevant to the crime charged; (2) the act is proven by clear and convincing evidence; and (3) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice." Here, S.L. testified that she was afraid of Lewis; the evidence of Lewis' violence toward her was relevant as to why she did not tell anyone about Lewis' sexual abuse. S.L.'s testimony at the *Petrocelli* hearing was sufficiently clear and convincing, and it was corroborated by victim M.L.'s testimony at the hearing that Lewis could be violent. The evidence was probative on why S.L. would conceal extensive sexual abuse, and this probative value was not substantially outweighed by the danger of unfair prejudice to Lewis. We therefore conclude the district court did not err in this regard.

6

Exh. 24.

It cannot be said that the prior bad act evidence at issue was irrelevant and had no probative value to questions at issue in Lewis' case. *Estelle*, 502 U.S. at 68-69; *U.S. v. LeMay*, 260 F.3d 1018, 1027 (9th Cir. 2001). Lewis has not demonstrated that the Nevada Supreme Court's decision was contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court law, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d). Accordingly, federal habeas relief is denied as to ground 1.

### ii. Ground 2

Lewis argues that he was deprived a full and fair opportunity to cross examine the State's witnesses about the alleged prior instances of violence in violation of his Fifth, Sixth, and Fourteenth Amendment confrontation, due process and equal protection rights (ECF No. 43, pp. 10-11).

Criminal defendants have the "right to confront and cross-examine witnesses and to call witnesses" on their own behalf. *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973). The right to confront witnesses is a trial right and it is unclear to what extent this right applies to pre-trial hearings. *Pennsylvania v. Ritchie*, 480 U.S. 39, 52 (1987).

Here, after the jury was selected, the State asked for a hearing outside of the jury's presence and advised the court that one of the counts that had been read to the jury was incorrect. Exh. 5, pp. 158-159. The State mentioned that testimony would be elicited at trial from Shii Shii and Memory that Lewis had guns and that weapons were "prominent" around the house. *Id.* at 163-169. The defense strenuously objected and urged that the State should have filed a pre-trial motion to admit evidence of prior bad acts. The court noted that there had been several continuances and said that, while a *Petrocelli* hearing was required, the court was unwilling to continue trial again. The

following day, after the State had delivered its opening argument, the court conducted the *Petrocelli* hearing discussed above in ground 1. Exh. 7, pp. 183-216.

Denying this claim on direct appeal, the Nevada Supreme Court reasoned:

> Nothing in *Petrocelli* requires the hearing to take place before trial; rather, the hearing should take place before the evidence of prior bad acts is admitted, as it did in this case. While a pre-trial motion in limine by the State would have been the preferred procedure, there was no prejudice under the particular facts of this case. Lewis was aware of the substance of the prior bad acts, as S.L. testified at the preliminary hearing that Lewis was violent toward her. He does not contend that he had insufficient time between the preliminary hearing and the trial to investigate the allegations.

Exh. 24.

Shii Shii testified at trial with specificity as to numerous incidences when Lewis sexually assaulted her over a period of several years. Exh. 7, pp. 226-288. As to Lewis' violence, during the preliminary hearing she testified that Lewis would hit and punch her for no reason, that he had thrown a fan, dishes, chairs and part of a water cooler at her, and that he had ripped her pony tail out of her head and slammed her on the couch. Exh. 1, pp. 55-56. Thus, Lewis had notice of testimony of his violent behavior. Moreover, Lewis had the opportunity to cross-examine both Shii Shii and Memory at the *Petrocelli* hearing. Lewis does not explain how a continuance would have impacted such cross examinations. He has not shown any deprivation of his right to call witnesses on his own behalf. He also has never specifically identified any witness that would have contradicted Shii Shii's testimony about prior violent acts.

This court concludes that Lewis has not shown that the Nevada Supreme Court's decision was contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court law, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Ground 2, therefore, is denied.

8

### iii. Ground 3

Lewis also asserts that the cumulative effect of the trial court's errors in allowing the State to introduce the alleged bad acts and failing to provide Lewis with the opportunity to investigate the alleged bad acts violated his Fifth, Sixth, and Fourteenth Amendment due process and fair trial rights (ECF No. 43, p. 12).

The cumulative effect of multiple errors can violate due process and warrant habeas relief where the errors have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *Parle v. Runnels*, 505 F.3d 922, 927 (9th Cir. 2007).

The Nevada Supreme Court held that no prejudicial error occurred. Exh. 24. Especially in light of this court's denial of grounds 1 and 2, the Nevada Supreme Court's decision was not contrary to, or involve an unreasonable application of, clearly established U.S. Supreme Court law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Federal habeas relief is denied as to ground 3.

### b. Ineffective assistance of counsel claims

Ineffective assistance of counsel (IAC) claims are governed by the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Supreme Court held that a petitioner claiming ineffective assistance of counsel has the burden of demonstrating that (1) the attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment, and (2) that the deficient performance prejudiced the defense. *Williams*, 529 U.S. at 390-91 (citing *Strickland*, 466 U.S. at 687). To establish ineffectiveness, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id*. To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. A reasonable probability is "probability sufficient to undermine confidence in the outcome." *Id*. Additionally, any review of the attorney's performance must be "highly

9

deferential" and must adopt counsel's perspective at the time of the challenged conduct, in order to avoid the distorting effects of hindsight. *Strickland*, 466 U.S. at 689. It is the petitioner's burden to overcome the presumption that counsel's actions might be considered sound trial strategy. *Id.*

Ineffective assistance of counsel under *Strickland* requires a showing of deficient performance of counsel resulting in prejudice, "with performance being measured against an objective standard of reasonableness, . . . under prevailing professional norms." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (internal quotations and citations omitted). When the ineffective assistance of counsel claim is based on a challenge to a guilty plea, the *Strickland* prejudice prong requires a petitioner to demonstrate "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

If the state court has already rejected an ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary to, or an unreasonable application of, the *Strickland* standard. *See Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.*

The United States Supreme Court has described federal review of a state supreme court's decision on a claim of ineffective assistance of counsel as "doubly deferential." *Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 129 S.Ct. 1411, 1413 (2009)). The Supreme Court emphasized that: "We take a 'highly deferential' look at counsel's performance . . . through the 'deferential lens of § 2254(d).'" *Id.* at 1403 (internal citations omitted). Moreover, federal habeas review of an ineffective assistance of counsel claim is limited to the record before the state court that adjudicated the claim on the merits. *Cullen*, 563 U.S. at 181-84. The United States Supreme Court has

10

specifically reaffirmed the extensive deference owed to a state court's decision regarding claims of ineffective assistance of counsel:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.* at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S. at ——, 129 S.Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S. at ——, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington*, 562 U.S. at 105. "A court considering a claim of ineffective assistance of counsel must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Id.* at 104 (quoting *Strickland*, 466 U.S. at 689). "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Id.* (internal quotations and citations omitted).

### i. Ground 4(a)

Lewis argues that trial counsel failed to investigate, interview or present several potential defense witnesses (ECF No. 43, pp. 13-19).

At the evidentiary hearing on Lewis' state postconviction claim that trial counsel was ineffective for failing to call several witnesses, trial counsel Stacey Roundtree testified. Exh. 45, pp. 5-24. She testified that Andrea James, Shii Shii and Memory's mother, had stated in a police report that there had been some serious domestic violence incidents between Lewis and his girlfriend Pamela McCoy. Counsel did not try to contact McCoy because she did not think that McCoy would necessarily be a good witness for Lewis in light of their volatile relationship and also because McCoy would not necessarily have any knowledge of the sexual abuse which was alleged to have

11

occurred in private.  Counsel also stated that she did not have a good address for McCoy and that it was her understanding that the State had not had success in locating McCoy either.  She stated that she had no recollection of being told that Max Sims, Jr. would be a potential witness for Lewis and that no Max Sims contacted her or the defense investigator.  Lewis was out of custody for the 3 years leading up to trial.  Lewis never gave Roundtree a phone number or address for Charles Scott.  Roundtree testified that Lewis intimated that his sons would be beneficial witnesses for him.  But at the conclusion of the preliminary hearing, Roundtree went to speak with the sons; they told her that they did not wish to be involved, they were there in support of their sisters, and they suggested that they would not be favorable witnesses for Lewis.  Lewis persisted; Roundtree asked repeatedly for an address to give to her investigator, which Lewis never provided.  Roundtree also testified that she met with Lewis and his girlfriend Mekedes Francisco numerous times.  Francisco was close in age to Shii Shii, and she and Shii Shii had been friends.  Francisco maintained that Shii Shii was jealous of Francisco and Lewis' relationship. Roundtree stated that she and Lewis and Francisco developed that jealousy as one of their theories of the case.  However, when Roundtree questioned Francisco at trial, Francisco surprised counsel and stated that her relationship with Shii Shii was fine and that there was no problem.

The state district court had denied Lewis' motion for appointment of counsel for the postconviction proceedings, and thus he conducted his own cross-examination of Roundtree.  *Id.* at 25-55.  He asked Roundtree if she recalled that he gave her the names of Susan Warren and Jerica Warren as witnesses; Roundtree responded that she did not recall those names or having that conversation with Lewis.  Roundtree stated that she had no recollection of Lewis giving her a list of witnesses with phone numbers for some of them, but that if he did give her such a list, then either she or her investigator would have tried to contact any witnesses.  In response to Lewis' questioning, she stated:

12

> None of the people whose names you gave me – most of them –
> and I never did figure out from you what would be their contribution . . .
> .we can contact them to find out their contribution, but we can't contact
> them if we don't have contact information, which I told you multiple times;
> which is why I gave you my cell number. My investigator gave you his cell
> number. And said if they're going to help you, at the very least have them
> call us 'cause we're not finding them. Bring them with you. . . . I'll come
> get them. We'll go get them. We'll do anything we can do to get your
> witness, as I told you multiple times. But what we can't do is find
> someone with just a name and no valid number or address.

*Id.* at 33. Roundtree also testified that she would not have put on a character defense because—to the extent it was even admissible—that would have opened the door for the State to bring in other evidence, including the prior bad act evidence that the defense had persuaded the court to exclude. She also explained that she and Lewis discussed that fact many times in the years leading up to trial. Roundtree further stated that Lewis' sons even informed the district attorney that Lewis had been threatening not to show up in court and had threatened others not to show up. Lewis asked Roundtree why she did not let his brother, Max Sims, testify. She responded that she never had an address for Sims and did not remember Lewis telling her that Sims would be beneficial. She reiterated that she had had numerous conversations with Lewis where she told him that if the people he mentioned really had information that would help Lewis that he needed to bring them to her office or set a meeting anywhere, but that "none of these people ever once over three years made a call, made a visit, came with you, any of that." *Id.* at 53.

Lewis then testified; he stated that McCoy and his brother would have testified that Shii Shii and Memory wanted Lewis to get back together with their mother and that the girls were sneaky, were liars, and tried to cause trouble between McCoy and Lewis. *Id.* at 56-67. On cross-examination Lewis acknowledged that over the 3 years and 8 different trial settings these witnesses never contacted defense counsel in any way or ever came to court. *Id.* at 64-67.

The Nevada Supreme Court affirmed the denial of this claim in Lewis' state postconviction petition:

13

> Appellant failed to demonstrate deficiency or prejudice. At the evidentiary hearing, counsel testified that appellant provided invalid contact information for some potential witnesses and that others who were contacted were unwilling to aid in the defense. Counsel further testified that she would have neither interviewed nor called to testify those whom appellant identified as simple character witnesses because, for tactical reasons, she was unwilling to put on a character defense. Counsel also testified to extensive trial preparation with the defense witness and stated that she was surprised when the witness changed her story under oath. We therefore conclude that the district court's findings of fact were supported by substantial evidence such that the district court did not err in denying appellant's petition. Moreover, appellant failed to demonstrate a reasonable probability of a different outcome at trial had counsel called the witnesses to testify.

Exh. 55. Lewis' testimony regarding how potential defense witnesses would have testified lacks credibility. Moreover, even assuming those witnesses would have testified as Lewis claimed, most of such testimony would have been inadmissible, nonprobative as to innocence or guilt, and/or would have permitted the State to introduce damaging evidence. He has not shown a reasonable probability of a different trial outcome if these witnesses had testified. Lewis has not demonstrated that the Nevada Supreme Court's decision affirming the denial of this claim was contrary to, or involved an unreasonable application of, *Strickland*, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). The court accordingly denies federal ground 4(a).

        ii. **Ground 4(b)**

Lewis contends that trial counsel failed to interview the alleged victims prior to trial (ECF No. 43, pp. 19-20).

This ground was procedurally defaulted in Lewis' third state postconviction petition (*see* ECF No. 93). In its order on respondents' motion to dismiss, this court deferred a decision as to whether Lewis could demonstrate cause and prejudice to excuse the procedural default. *Id.* Lewis argues that he can do so under the equitable rule established in *Martinez v. Ryan*, 566 U.S. 1, 12-14, 16-18 (2012). *See also Trevino v.*

14

*Thaler*, 569 U.S. 413, 423 (2013). Under *Martinez*, "cause" to excuse the default may be found:

> [W]here (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-counsel claim"; and (4) state law requires that an "ineffective assistance of trial counsel [claim] ... be raised in an initial-review collateral proceeding."

*Trevino*, 569 U.S. at 423, quoting *Martinez*, 566 U.S. at 14, 17.

Lewis was not represented by counsel in the state proceedings; thus, the remaining question is whether the claim is "substantial." *Martinez*, 566 U.S. at 14. A procedurally defaulted ineffective assistance of counsel claim is not substantial unless the petitioner can establish both a deficient representation by trial counsel and prejudice under *Strickland*. *Lopez v. Ryan*, 678 F.3d 1131, 1138 (9th Cir. 2012).

This court agrees with respondents that ground 4(b) is largely conclusory. Lewis does not identify any additional evidence that defense counsel would have uncovered has she interviewed his daughters. Notably, Roundtree could not compel the daughters to meet with her, but in a July 2005 file memorandum she wrote that she had asked Lewis to bring his daughters in to meet with her, and he had said that he would try. Exh. 75. Moreover, the defense cross-examined the daughters at the preliminary hearing. Lewis makes a passing reference in this petition that Shii Shii may have recanted at some point. In a September 2004 file memorandum Roundtree wrote "the tape of a potential recantation is a bust" because it was indecipherable. Exh. 65. Nothing in the record suggests that interviewing the daughters would have revealed any exculpatory evidence. Instead, they testified at trial to years of sexual abuse. They were cross-examined at trial, including about their prior statements. Lewis argues at length that Roundtree should have interviewed the daughters because they continued to have contact with him and visit him after he was charged and up to trial, which he argues calls their credibility into question. But Roundtree cross-examined the daughters

about their past and current relationships with their father. Lewis has not specifically or credibly identified what an impeachment interview with the daughters would have yielded that would have led to a reasonable possibility of a different outcome at trial. He simply has not demonstrated that this is a substantial claim of ineffective assistance of trial. Thus, he has also failed to demonstrate that he could satisfy *Strickland*'s ineffective assistance of counsel standard. Lewis is not entitled to federal habeas relief on ground 4(b).

The petition, therefore, is denied in its entirety.

## IV.  Certificate of Appealability

This is a final order adverse to the petitioner. As such, Rule 11 of the Rules Governing Section 2254 Cases requires this court to issue or deny a certificate of appealability (COA). Accordingly, the court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *Id.*

Having reviewed its determinations and rulings in adjudicating Lewis' petition, the court finds that none of those rulings meets the *Slack* standard. The court therefore declines to issue a certificate of appealability for its resolution of any of Lewis' claims.

## V. Conclusion

**IT IS THEREFORE ORDERED** that the fourth-amended petition (ECF No. 43) is **DENIED** in its entirety.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk shall enter judgment accordingly and close this case.

DATED: 18 September 2019.

GLORIA M. NAVARRO
UNITED STATES DISTRICT JUDGE